Warner, Chief Justice,
dissenting.
The defendant was indicted for the seduction of Emma E Chivers, an unmarried female, under the provisions of the 4305th section of the Code, which declares that, “if any person shall, by persuasion and promises of marriage, or other false and fraudulent means, seduce a virtuous unmarried female, and induce her to yield to his lustful embraces, and allow him to have carnal knowledge of her, such person, on conviction, shall be punished by imprisonment and labor in the penitentiary for a term not less than two nor longer than twenty years. The prosecution may be stopped at any time by the marriage of the parties, or a bona fide offer to marry on the part of the seducer.”
When the defendant was arraigned, he filed a plea in bar of the indictment, alleging therein that he was a married man at the time the offense is alleged to have been committed, and had been so for more than eleven years; had a lawful wife, *with whom he was then cohabiting, and three children, which was well known to the said Emma I. Chivers, and could not have been a party to a contract of marriage, etc.
The counsel for the State demurred to the plea, which was sustained by the Court,' and the defendant excepted. The question made by the defendant’s plea is, whether a married man, known to be so by the female alleged to have been seduced, can be indicted and convicted under the before recited section of the Code, This section of the Code, it will be perceiv*d, is not restricted, by its terms, to unmarried men, but declares that if any person shall, bypersuasion and promises of-marriage, or other false and fraudulent means, seduce a virtuous unmarried female, *223 etc. The fact that the seducer cannot repair the injury done by marriage, because he is already married, does not lessen the offense, but is an aggravation of it. It might as well be said that if an unmarried man should seduce a virtuous unmarried female, by persuasion and promise of marriage, and should afterwards marry another woman, that he could not be convicted and punished because he could not then repair the injury by marriage of the victim of his lust. This section of the Code should receive a reasonable construction, that the injury done to the seduced female may be repaired by the seducer by marriage, when it can ¿awfully be done. But it is said the seduced female in this case fcnew at the time that the defendant could not marry her, and, therefore, she was not deceived by him, that she acted in her own wrong. The reply is, that the provisions of the statute are aimed at the seducer, and not at his victim; besides, it is alleged in the indictment that the defendant’s wife was in bad health and could not live long, and tlv.t he promised to marry her after his wife’s death.
The mother of the human race was tempted and fell, ana the object and theory of our law is to punish the tempter, the seducer, whether he be a married or an unmarried man. If the defendant truthfully represented to Miss Chivers that his wife was in bad health and could not live long, and promised to marry her after his. wife’s death, and thereby persuaded and *induced her to yield to his lustful embraces, and allowed him to have carnal knowledge of her, then he would be guilty of seduction under the provisions of the Code. If the defendant falsely and fraudulently represented to her that his wife was in bad health and could not live long, when in fact she was not in bad health, and conditionally promised to marry her as before stated, and thereby persuaded and induced her to yield to his lustful embraces, etc., then he would be guilty of seduction, notwithstanding he was a married man.
Persuasion and promises of marriage are not the only means contemplated by the statute by which a virtuous unmarried female may be seduced. The statute did not intend to enumerate all the means to which the artful seducer might resort to accomplish his purpose, but if he promises marriage, or by “other false and fraudulent means,” seduces a virtuous unmarried female, he would be guilty of seduction, although he might not have promised marriage. The other means employed to accomplish his purpose, as contemplated by the statute, must be such as the law will recognize to be false and fraudulent, according to the legal .sense of those words, as applicable to the facts of the case. As if the defendant although a'married man, being the pastor of the church of which the young unmarried female was a member and her school teacher, as is disclosed by the evidence in this record, having her entire confidence, told her that he loved her, and asked her to return his love, and if she would allow him to be intimate with her he would not harm her, would not hurt her feelings for the world, that he had thought of all this before and knew it was *224 not .wrong; had made it a subject of prayer, had prayed to be directed right, that his conscience did not smite him for the course he was taking, that he believed if it had been wrong that Providence would have interposed some way to prevent it, that he had that much confidence in God that he believed that some obstacle would have been interposed to their intimacy, that his wife did not love him and had refused to have anything to do with him, that he had no one in whom he could place confidence, , and begged her to trust him wholly, and not to be so ^reserved, that she must know that if he did anything wrong it would hurt him as much as her, that she might know that he would not injure himself, etc.
In view of the relative position which this unmarried femala occupied'towards the defendant, the means employed by him to seduce her, come within the definition of “other false and fraudulent means,” as contemplated by the statute, and the fact that he was a married man at the time, and that his victim knew it, does not protect him against the crime of seduction, as charged in the indictment, and, in my judgment, there was no error in sustaining the demurrer to the defendant’s plea. The object and intention of the statute was to protect the virtue of unmarried females against seduction, by married as well as unmarried men, either by persuasion and promises of marriage, absolute or conditional, or by other false and fraudulent means, and to punish the offender therefor in the Courts, so as to prevent the injured parties or their friends from seeking redress by the punishment of the offender with their own hands. The statute is a beneficial one, and I am not disposed, as a judicial magistrate, to restrict its operation so as to defeat its object and manifest intention. The motion in arrest of judgment was properly overruled.
The offense as charged in each count in the indictment is sufficiently technical and correct, and states it in the terms and language of the Code, and so plainly, that the nature of the offense charged might have been easily understood by the jury. It is only necessary to allege in the indictment such facts as make out the offense under the provisions of the Code. All the evidence expected to be. introduced on the trial need not be set forth in the indictment, and, therefore, there was no error in the Court in admitting evidence pertinent to the issue on trial, because it was not set forth therein.
It is insisted that the Court erred in charging the jury “that the presumption of law is that she, Emma I. Olivers, the female .alleged to have been seduced, was virtuous, and that presumption remains until removed by proof. She must have personal chastity. If she, at the time of the alleged seduction, *had never had unlawful sexual intercourse with man, if no man had then carnal knowledge of her, she was a virtuous female within the meaning of the law. If man had then carnal knowledge of her, had had sexual intercourse with her, she was not a virtuous female within the meaning of the law.”
This charge of the Court was, in my judgment^ a correct in *225 terpretation of what the statute means by a virtuous unmarried female. If the unmarried females in this State are not, in the eye of the law, presumed to be virtuous until the contrary is shown, the condition of our unmarried females is quite different from what I have always supposed it to be, and cannot, by my judgment, sanction the contrary presumption that they are not virtuous, but must affirmatively prove 'that they are so. The presumption of the law is that all of our unmarried females are virtuous, and that the reverse thereof is the exception. The proposition contended for, as applicable to our unmarried females in this State, is simply monstrous. The public morals of our people have not yet become so corrupted that the law will presume that our unmarried females are not virtuous, and if such a state of things existed, it would be a very cogent reason why the statute against seduction should be enforced for the protection of society generally.
But it is said the Court erred in its charge, in not submitting the question to the jury, under the evidence of Collier and others, whether Miss Chivers was a virtuous unmarried female, as contemplated by the statute, at the time of her alleged seduction by the defendant. The Court did charge the jury that if she had never had unlawful sexual intercourse with man, if no man had then had carnal knowledge of her, she was a virtuous female, within the meaning of the law, but if man had then carnal knowledge of her, had had unlawful sexual intercourse with her, she was not a virtuous female, within the meaning of the law. If that was not the proper standard by which a virtuous female should be tested, in the sense of the statute, what shall be the proper standard? If *she had her pristine virtue at the time the defendant seduced her, and he deprived her of it, was she not a virtuous female, in the sense that word is used in the statute? Will the wayward, imprudent acts of a school girl, the allowing improper liberties to be taken with her person in play, or otherwise, rebut the presumption of the law that she is a virtuous female, in the sense of the statute, and that she has had carnal knowledge of a man? In the estimation of some people, if an unmarried female wears her dress too short or too low, and thereby exposes her person, she might not be considered a virtuous female.
What shall be the test of a virtuous unmarried female, in the sense and meaning of the statute, unless we adopt that as stated by the Court in its charge to the jury? In my judgment, so long as an unmarried female retains her personal chastity, she is a virtuous unmarried female, within the true intent and meaning of the statute, and that he who persuades or induces her to surrender to him that personal chastity, in the manner as prescribed therein, is a seducer; in other words, if no man has ever before deprived the unmarried female of her personal chastity, the first man that unlawfully does so is the seducer of a virtuous unmarried female, as contemplated by the statute.
In this case, the female alleged to have been seduced had not *226 only the presumption of the law in favor of her being virtuous, but she stated positively, in her evidence, that no man had ever had carnal knowledge of her but the defendant. Was there anything in the evidence of the defendant which, in the judgment of the law, would rebut the presumption of her being a virtuous unmarried female, in the sense of the statute, and her sworn statement that she was so at the time of the alleged seduction?
Whether the jury believed the statements of Collier, I do not know, that was a question for them, but what were his statements in relation to Miss Chivers’ personal chastity? In 18^7, he went to school with her to the defendant; she called him to her one day in the school room, and told him to sit by her, *he did so, and she took his hand, put it inside her bosotn next to her skin, he felt her legs, hugged and kissed her. At another time, she told him that she would let him sleep with, her that night, provided her mother was absent, agreed to gc, but did not, was sick. At another time, one day about two o’clock, she sort of pulled up her clothes and asked him if he did not .want to feel her legs; this was near the school-house where the boys were playing ball; she also told him one day in the school-house, that if he would call on her some night like a decent young man, and after he went out, wait on the railroad about half an hour or so, she would come out and meet him on the railroad; that arrangement was never consummated, was sick, and went home to Alabama, where he lived then and now. Take all this evidence of Collier to be true, and what of it ? Does it prove that any man had carnal knowledge of her person, or that she was not a virtuous unmarried female in the sense of the statute, at the time of the alleged seduction by the defendant? The law presumes her to have been so, and she swore positively that she was so. So far as the evidence of Collier is concerned, admitting it all to be true, the citadel of her virtue remained intact; it was not captured by him, or any other man, up to the time of the alleged seduction by the defendant, so far as the evidence shows. It is somewhat remarkable, however, that Collier, being about nineteen or twenty years of age, who was so much tempted by this young lady, according to his account of it, did not imprové the opportunities so gratuitously and repeatedly offered to him.
After all, the question on this branch of the case for the jury to decide, was whether Miss Chivers was a virtuous unmarried female at the time of the alleged seduction by the defendant, within the meaning of the statute; had she ever before that time had carnal knowledge of a man? Was she in possession of her personal chastity at that time, and did the defendant take it from her? The presumption of the law was in her favor, besides her positive evidence of the fact, and admitting all the evidence offered to prove the contrary *thereof to have been true, still, it falls very far short of being sufficient, under the law, to rebut that legal presumption, and the proven fact that she was, at the time of the seduction, a virtuous unmarried female, in the sense and meaning of the statute.
*227 There is no evidence offered by the defendant which approximates to the establishment of the fact that she had carnal knowledge of any man prior to the alleged seduction. The evidence of Collier, if true, proves improper conduct on her part, but there is nothing in that evidence which would authorize the jury, under the law, to find that she had carnal knowledge of him, or any other man. I will not say that evidence of a man and woman being found in bed together, or other acts of a similar character, which, under the law, would raise a violent presumption of unlawful sexual intercourse between the parties, would not be sufficient evidence of carnal knowledge of each other to authorize the jury to so find; but there are no facts of that kind proved in this case, or any other facts which, under the law, would raise a violent presumption that she had had carnal knowledge of any man other than the defendant, and, for that reason, there was no error in the charge of the Court of which the defendant can complain. The Court ought not to have charged the jury upon an assumed state of facts not proved by the evidence, but the Court did charge the jury that she must have had personal chastity, that if man had carnally known her, had had unlawful sexual intercourse with her, she was not a virtuous female within the meaning of the law, and left the jury to decide that question, under the evidence, in relation to that point in the case, including Collier’s evidence, as well as that of the other witnesses.
Where is the evidence in this record that raises a violent presumption under the law, that Miss Olivers ever had at any time carnal knowledge of any man other than .the defendant, which would have authorized the Court to have charged the jury in relation to it? When a defendant is indicted on the criminal side of the Court for seducing a virtuous unmarried *female, it is not a good legal defense for him to black ball her character by proving loose declarations, imprudent or immodest conduct on the part of his victim; but he must go further, and prove that she had lost her personal chastity prior to his alleged seduction of her, or he must prove such facts as, under the law, would raise a violent presumption that she had done so, such facts as, under the law, would authorize a jury' to find that she had had unlawful sexual intercourse with a man. To hold otherwise will make the statute which was intended to protect the personal chastity of unmarried females not worth the paper on which it is written.
It was not the object of the statute to protect the defendant’s personal chastity, as the argument assumes, but the object of it was to protect the personal chastity of the unmarried female against his attempts to take it from her, no matter what may now be his pretexts or. excuses for depriving her of it. If she was such a notorious character as he would now have us to believe, why did he not have her excluded from the church of which he was the pastor. Is it a legal defense for him now to say that he was seduced to deprive her of her personal chastity? The argument amounts to just that and nothing more.
*228 It was not a question of damages that was involved on the tiial of the accusation, or whether the defendant was guilty of the offense of adultery and fornication, but the question was did the defendant deprive the unmarried female of her personal chastity, as alleged in the indictment. If she had lost it before, then he did not deprive her of it, for he could not take from her that which she did not have. The. law, however, presumes that Miss Chivers was a virtuous unmarried female in the sense of the statute, at the time of the alleged seduction; she swore that she was, and taking all the evidence offered by the defendant to show the contrary thereof to be true, it is not sufficient, under the law, to have authorized the jury to find that she was not a virtuous unmarried límale as contemplated by the statute, and who could not have been seduced and deprived of her personal chastity by the defendant, as ^'alleged in the indictment. In my judgment, there was no error in the refusal of the Court to charge as requested or in the charge as given, of which the defendant had a right to complain, in view of the evidence contained in the record. If the jury believed the testimony of Miss Chivers and her mother, (and that was a question exclusively for their consideration) then the verdict was unquestionably right, and according to the repeated rulings of this Court, heretofore made, that verdict should not be disturbed. I am, therefore, of the opinion that the judgment of the Court below should be affirmed.